NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

JIMMY EDWARD ESTELL JR., *Petitioner*.

No. 1 CA-CR 21-0346 PRPC
FILED 4-21-2022

Petition for Review from the Superior Court in Yuma County
No. S1400CR201600826
The Honorable Brandon S. Kinsey, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Yuma County Attorney's Office, Yuma
By Jon R. Smith
*Counsel for Respondent*

Yuma County Legal Defender's Office, Yuma
By Zachary John Dumyahn
*Counsel for Petitioner*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**F U R U Y A**, Judge:

¶1        Jimmy Estell Jr. petitions this court for review from the dismissal of his petition for post-conviction relief filed under Arizona Rule of Criminal Procedure ("Rule") 33. We have considered the petition for review and, for the reasons stated, grant review and deny relief.

## FACTUAL AND PROCEDURAL HISTORY

¶2        While serving a prison sentence on an unrelated conviction, Estell pleaded guilty in 2016 to the offense of attempting to promote prison contraband. The plea agreement stipulated to the sentence of prison for a term not to exceed the presumptive and that such sentence run consecutively to the term of imprisonment he was then serving in Maricopa County Superior Court case number CR2011-117395-001. By statute, any prison sentence Estell received had to be consecutive. *See* A.R.S. § 13-711(B) (requiring a sentence imposed on a current prisoner to run "consecutively to the undischarged term of imprisonment."). At the change-of-plea hearing, Estell concurred with the trial court's statement that he had agreed to a consecutive prison term.

¶3        At the start of the sentencing hearing, the trial court stated it was "inclin[ed] to follow the recommendation contained" in the presentence report—which urged the court to impose "the presumptive term of 3.5 years, with credit for 125 days served and that this be served consecutively to the sentence" Estell was then serving. At Estell's request, the court postponed sentencing to consider mitigation.

¶4        After presenting mitigation evidence at a combined mitigation/sentencing hearing, Estell's attorney asked the trial court to impose a less-than-presumptive term, reasoning that "since [Estell] is presently doing another prison sentence, it is consecutive, and I think that is significant punishment in and of itself." The court responded that having previously "indicated it was inclined to follow the recommendation of the presentence report writer because it could find no reason to mitigate," it

"still f[ou]nd no mitigation" after the defense's presentation. After allowing Estell to speak, the court stated it had "reviewed the presentence report prepared in this case" and had "considered the nature and circumstances of [Estell's] offense and the law applicable to [his] case." The court then pronounced sentence as follows:

> It is the judgment of the court that for the previously mentioned offense the defendant shall serve the presumptive term of imprisonment of three and a half years in the custody of the Arizona Department of Corrections. The sentence shall date from today's date and the defendant shall receive credit for 146 days served prior to sentencing.

¶5        The court did not explicitly address the consecutive or concurrent nature of the sentence imposed. Nor did its written sentencing order, which merely stated, "This sentence is to date from February 8, 2017 [i.e., the date of sentencing]. The defendant is to be given credit for one hundred and forty six (146) days served prior to sentencing."

¶6        More than a year later, the trial court issued an order under Rule 24.4 "correcting" the sentencing order. *See* Ariz. R. Crim. P. 24.4 ("The court on its own or on a party's motion may, at any time, correct clerical errors, omissions, and oversights in the record. The court must notify the parties of any correction."). The Rule 24.4 order added the following language to the description of Estell's sentence quoted in the above paragraph: "This sentence shall run consecutively to the Maricopa County case number CR2011-117395-001."

¶7        Estell opposed the order, contending there was no "clerical mistake" permitting correction under Rule 24.4 and that his sentence, as orally imposed and documented in the record, was a concurrent one. In response, the State urged the court to deny Estell's objection on the grounds that his sentence was required by statute and the plea agreement to be consecutive, the parties acknowledged the sentence would be consecutive, and the sentence was presumed to be consecutive given the trial court's failure to make that designation explicit. The trial court rejected Estell's arguments, letting its Rule 24.4 order stand.

¶8        Estell petitioned for post-conviction relief, elaborating on his position that the trial court lacked authority to modify the sentencing order because the sentence as originally imposed was concurrent and final. Estell reasoned that the concurrent nature of the sentence was implied by the trial court's (1) statement the sentence would date from the date of sentencing

and (2) award of presentence incarceration credit. The State responded that Estell had waived his claim by agreeing not to challenge a consecutive sentence as part of his plea deal and that the claim failed on the merits, in any event, because the record showed the court intended to impose a consecutive sentence. The trial court summarily dismissed Estell's petition, occasioning our review.

## DISCUSSION

**¶9**        We review the trial court's summary denial of post-conviction relief for an abuse of discretion. *State v. Amaral*, 239 Ariz. 217, 219, ¶ 9 (2016). The court did not abuse its discretion by dismissing Estell's petition here because we interpret the oral pronouncement of his sentence as imposing a consecutive term.

**¶10**        Though the superior court did not explicitly designate the sentence as consecutive, neither did it explicitly designate a concurrent term. Thus, the court's sentencing language is ambiguous because "it is open to multiple reasonable interpretations." *Chaparro v. Shinn*, 248 Ariz. 138, 140, ¶ 9 (2020) (quoting *Glazer v. State*, 244 Ariz. 612, 614, ¶ 12 (2018)).

**¶11**        We are unpersuaded that the court's award of presentence incarceration credit can only be interpreted as showing an intent to impose a concurrent sentence. Because Estell was transferred from the custody of state prison officials to a county detention facility to answer the charges in this case, he could be entitled to presentence incarceration credit for that time even if he received a consecutive sentence. *See State v. Seay*, 232 Ariz. 146, 147–49, ¶¶ 6–7, 10 (App. 2013) (holding a defendant is entitled to presentence incarceration credit "when transferred pursuant to court order from ADOC to a county jail to face new charges and the court does not modify the conditions of release on the new charges").

**¶12**        Estell argues the decision in *State v. McClure*, 189 Ariz. 55 (App. 1997), barred him from receiving credit toward a consecutive sentence and therefore implies he must have received a concurrent one. In *McClure*, we decided that although the defendant was transferred from a federal prison facility to a county jail to answer state charges, the defendant was not entitled to presentence incarceration credit toward his state sentence because the parties stipulated in a plea agreement that the defendant's state sentence would be served consecutively to his federal sentence. *Id.* at 57. *McClure* is distinguishable from the facts of Estell's situation. In *McClure*, the defendant was found to have "bargained away" his entitlement to credit by negotiating for "minimum, concurrent state

sentences in exchange for serving those sentences consecutively to his federal sentence," leaving "nothing left to waive in terms of incarceration credit." *Id.* Estell's plea deal, by contrast, does not show a waiver of presentence incarceration credit. Because Estell's sentence was statutorily required to be consecutive, it was not an issue subject to negotiation as in *McClure*. And in any event, the record contains no evidence that the parties considered waiver of presentence incarceration credit as part of the plea negotiations at issue here.

**¶13**         Estell's argument that the trial court necessarily imposed a concurrent sentence by stating it would "date from today's date" is also unpersuasive. It is true such language ordinarily reflects imposition of a concurrent term. However, it is not necessarily inconsistent with an intent to impose a consecutive term. *See Valenzuela v. State ex rel. Eyman*, 14 Ariz. App. 374 (1971) (holding that the court's "intent that consecutive sentences be served [wa]s manifested," though "not a model of clarity," where the court stated the sentences were "to run consecutively and to commence as of this date"); *but see McGilbry v. State ex rel. Eyman*, 5 Ariz. App. 264 (1967) (holding that the pronouncement of a sentence "[t]o date from this day, said sentence to run consecutively" with a second sentence, should be treated as concurrent based on authority that sentences were presumed to be concurrent unless "the contrary clearly appears, and any reasonable doubt or ambiguity on that point is resolved in favor of the defendant"). Here, Estell's sentence was required to run consecutively by operation of a statute. *See* A.R.S. § 13-711(B). Section 13-711(B) is self-effectuating. "Trial judges are presumed to know the law and to apply it in making their decisions." *State v. Williams*, 220 Ariz. 331, 334, ¶ 9 (App. 2008) (citation omitted). Given the requirements of the statute and this presumption, it does not follow that the court necessarily intended to impose a concurrent sentence because it described Estell's sentence as "dat[ing] from today's date."

**¶14**         Where sentencing language "is subject to more than one reasonable interpretation, we will resolve the ambiguity by examining other factors, including the surrounding circumstances." *Chaparro*, 248 Ariz. at 140, ¶ 9. Here, the court made statements at the change-of-plea and sentencing/mitigation hearings recognizing the plea agreement required a consecutive sentence and conveying it would follow the recommendation of the presentence report—which called for a consecutive sentence. At no point did the court or any party contemplate that a concurrent sentence might be imposed or that the court might reject any condition of the plea agreement. Furthermore, Rule 26.13 at that time stated that "[s]eparate sentences of imprisonment imposed on a defendant for 2 or more offenses,

whether they are charged in the same indictment or information, shall run consecutively unless the judge expressly directs otherwise." A comment to Rule 26.13 provided it was intended to apply to "a sentence imposed while the defendant is serving a sentence in Arizona or elsewhere for another offense." This record indicates the court intended to impose a consecutive term. *See State v. Bowles*, 173 Ariz. 214 (App. 1992) (holding that the trial court intended to impose a consecutive sentence where, despite describing the sentence as "concurrent" during its oral pronouncement, the court "clearly stated at both the change of plea hearing and the sentencing hearing that the sentence was to be consecutive per the plea agreement," and "[a]t no time did she state that she was not going to follow the plea agreement").

¶15        Rule 24.4 may not be used "to cause an order or judgment that was never previously made or rendered to be placed upon the record of the court." *State v. Pyeatt*, 135 Ariz. 141, 143 (App. 1982). The rule does, however, "allow[ ] the record to be corrected to reflect the truth." *State v. Johnson*, 113 Ariz. 506, 509 (1976). Because the trial court's Rule 24.4 order "reflect[ed] the truth of the intention of the court at the time" it pronounced sentence, it "was proper under these circumstances." *Id.*

## CONCLUSION

¶16        We grant review and deny relief.

